IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:08CR332-1–HEH |
| | ) |
| MALIK RAHMEL DILLARD, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
(Government's Motion for Upward Departure)

On February 11, 2009, the defendant, Malik Rahmel Dillard, entered a plea of guilty to conspiracy to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a), and two substantive counts of bank robbery, in violation of 18 U.S.C. § 2113(a)(2). As part of his plea agreement, the defendant admitted committing fourteen other bank robberies and acknowledged that they would be considered as relevant conduct in computing his sentencing guidelines on the counts to which he pled guilty. The accompanying statement of facts revealed that this series of bank robberies took place over a ten-week period, spanned eight states, and had a total yield of approximately $198,000. While no firearms were displayed, the defendant conceded that threats and intimidation were employed in each instance. The Court deferred sentencing pending the preparation of a Presentence Investigation Report ("PSR").

In computing the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the probation officer determined that the defendant had a Total Offense

Level of 27, a Criminal History Category of VI, based upon 14 points, and a resulting sentencing range on Count 1 of 130-162 months. Under the Guidelines, the range for Counts 2 and 3 are combined. The United States has now filed a motion seeking an upward variance or departure based principally on the calculated Guidelines' underrepresentation of the seriousness of the defendant's criminal history and the likelihood that he will continue to disobey the law.[1] The government contends that the Guidelines, as computed, fail to adequately account for all sixteen bank robberies. Section 3D1.4 of the U.S.S.G., which is intended to enhance penalties for multiple criminal offenses, provides for only a five-unit increase. The commentary accompanying § 3D1.4 provides:

> [i]nasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units.

*U.S.S.G.* § 3D1.4. The government argues that this is the type of case contemplated in the commentary where the total conduct warrants more than a five-unit increase.

The government also contends that the Guidelines, as calculated, inadequately reflect the extent of the defendant's leadership role in masterminding the majority of the sixteen bank robberies. Lastly, the government points out that the defendant had only been out of prison one week when he was involved in the first of this series of robberies.

In reviewing the government's motion, the Court is guided by the analytical

---

[1] The Court had independently notified the parties that a possible upward variance or departure was being contemplated in this case.

framework articulated by the United States Court of Appeals for the Fourth Circuit in *United States v. Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996), *United States v. Bonetti*, 277 F.3d 441, 449 (4th Cir. 2002), and *United States v. Dalton*, 477 F.3d 195, 198-200 (4th Cir. 2007), as supplemented by the teachings of *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006).

Following the established regimen, this Court begins its analysis by reviewing the circumstances and consequences of the offense. The Court has reviewed the PSR, plea agreement, statement of facts, memoranda of counsel, and assorted letters from friends and relatives of the defendant. The Court heard oral argument on July 7, 2009. Both the government and defense counsel agree that the U.S. probation officer has properly computed the Guidelines in this case.

Based upon the scope of this bank robbery spree—sixteen banks in eight separate states over a 75-day period, yielding almost $198,000, beginning one week after the defendant's release from the U.S. Bureau of Prisons—this Court concludes that the facts and circumstances of this case are atypical and clearly take the case out of the applicable Guidelines' heartland. In drawing this conclusion, the Court also notes that in 2004, the defendant was convicted of conspiracy to commit bank fraud in the U.S. District Court for the Northern District of Georgia, and was committed to the U.S. Bureau of Prisons for a term of thirty-three months. Within months of his release, he was convicted of felony public indecency in Atlanta, Georgia, in 2006, triggering a violation of the conditions of

his supervised release, and resulting in fourteen months of additional confinement. One week following his release on that term of commitment, the defendant committed the first of sixteen bank robberies. Obviously, prior sentences have failed to promote respect for the law, provide for deterrence, or protect the community. In fact, it appears they have had no impression on him at all.

Next, the Court must determine if the rationale advanced by the government is a favored ground for departure. The Guidelines, in effect, authorize and encourage departures based on substantial underrepresentation of a defendant's criminal history. Section 4A1.3(a)(1) of the U.S.S.G. provides that,

> [i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

*U.S.S.G.* § 4A1.3(a)(1). Moreover, the defendant's criminal activity is significantly in excess of the five units contemplated in U.S.S.G. § 3D1.4. Therefore, in the Court's view, the Guidelines, as calculated, significantly underrepresent the defendant's criminal behavior and the likelihood of continuing criminal activity. The Guidelines, as calculated, hold him accountable for only a fraction of his total criminal activity and are therefore inadequate.

Following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), imposing a sentence under the advisory Guidelines is a multi-step process. *See Moreland*, 437 F.3d at 432. The court must initially determine, after making appropriate findings of fact, the

4

applicable guideline range. The court should then consider whether a sentence within that range "serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). For the reasons stated above, the Court is of the opinion that a sentence within the range of 130-162 months fails to serve the factors set forth in § 3553(a). A sentence in that range, based upon the defendant's relentless history of lawlessness, fails to promote respect for the law, provide for deterrence, and properly account for the nature and circumstances of the underlying offenses.

In selecting a sentence outside the advisory guideline range, the court should first consider whether appropriate grounds for departure exists. *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006). When "an appropriate basis for departure exists, the district court may depart." *Moreland*, 437 F.3d at 432. For the reasons stated above, this Court believes that an appropriate ground for departure exists.

The methodology to be applied by a sentencing court in structuring an upward departure is now well settled in the Fourth Circuit. *See Dalton*, 477 F.3d 195, 197 (4th Cir. 2007). A court should move to successively higher levels only upon finding that the prior level does not provide a sentence that adequately reflects the seriousness of the defendant's conduct. *Id.* at 199. As the court pointed out in *Dalton*, this does not require the sentencing judge "to move only one level, or to explain its rejection of each and every intervening level." *Id.*

5

In assessing the appropriate range of punishment in this case, this Court has incrementally reviewed the sentencing ranges provided in offense levels 28 (140-175), 29 (151-188), 30 (168-210), 31 (188-235), and found them to be inadequate. These levels fail to account for the eleven additional bank robberies or units of criminal conduct not included in the offense combining calculus set forth in U.S.S.G. § 3D1.4. The government recommends that for every two bank robberies committed by the defendant, he receive a one-level increase. The Court believes that this suggestion is logical, appropriate, and consistent with the methodology and proportionality of U.S.S.G. § 3D1.4. In adopting the government's recommendation, it is important to note that the sixteen bank robberies in this case were unrelated temporally or geographically. They occurred over a 75-day period and in eight different states. In each of these robberies, the defendant played a progressively more significant role.

On careful review, the Court believes that Total Offense Level 32, Criminal History Category VI (210-262), is still inadequate to reflect the defendant's relentless and sustained history of criminal conduct aside from the immediate bank robbery escapade. Several months after the defendant's release from custody in Fulton County, Georgia, in 2003 for theft and firearms charges, he was arrested by federal agents for conspiracy to commit bank fraud. This fraudulent scheme involved a loss of approximately $246,000. After serving thirty-three months in federal custody, the defendant was arrested again in Fulton County, Georgia eight months later for felony public indecency, which apparently

involved children. As a result, his supervised release was revoked and he served an additional fourteen months of confinement. One week after his release from the Bureau of Prisons, the defendant robbed a SunTrust Bank in Atlanta, Georgia.

The Court therefore concludes that an additional upward departure of one level is necessary to properly embrace the defendant's unabated pattern of reckless criminal conduct. Accordingly, the Court finds that a sentence that is adequate, but not longer than necessary, to promote respect for the law, provide for deterrence, and protect the community, can be achieved at Total Offense Level 33, Criminal History Category VI, namely 235-293 months. Prior periods of incarceration, probation, and supervised release have had no impact or influence on this defendant. The nature and circumstances of the immediate offenses also reveal an atypical degree of disrespect for the laws of the United States.

The Court is mindful that a sentence within the guideline range of 235-293 exceeds the individual maximum statutory penalty for each of the offenses of conviction. This does not pose a legal obstacle. Under the Guidelines, the offenses of conviction are grouped for the purpose of calculating the offense level, based on relevant conduct, unless Congress dictates that separate sentences be imposed. *See U.S.S.G.* §§ 3D1.1-3D1.4. The grouping rules, however, apply only to offense level computations and not to the other components of the sentencing process. *United States v. Chase*, 296 F.3d 247, 250-51 (4th Cir. 2002).

The choice between concurrent and consecutive sentences arises later, when the court imposes a specific sentence. The court must select an appropriate term of imprisonment by consulting the sentencing table set forth in Chapter 5, Part A, which prescribes a guideline range based on the defendant's final offense level and criminal history category. The court must then refer to the "stacking" rule, § 5G1.2, if (i) the defendant has been convicted of multiple offenses and (ii) the "total punishment" – i.e., the point within the guideline range designated by the district court as the appropriate term of imprisonment – exceeds the statutory maximum for the offense carrying the greatest penalty. In that event, the court must impose consecutive sentences "to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d).

*Id.*

Although the Court was required under the Guidelines to group the defendant's offenses of conviction for the purpose of calculating his offense level, they will be degrouped and consecutive sentences will be imposed in order to achieve an adequate sentence in the 235-293 month range. *See U.S.S.G.* § 5G1.2(d).

/s/
Henry E. Hudson
U.S. District Judge

Date: July 10, 2009
Richmond, VA

8